**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 06-75-DLB**

**BENCH BILLBOARD COMPANY**                                                          **PLAINTIFF**

**vs.**                                    **MEMORANDUM OPINION AND ORDER**

**CITY OF COVINGTON, KENTUCKY**                                            **DEFENDANT**

*       *       *       *       *       *       *

Plaintiff, an Ohio company engaged in advertising products and services on the backrests of benches it installs on both public and private property, commenced this suit after the City of Covington enacted an ordinance which prevented it from continuing to place its advertising benches in the City's public rights-of-way.

This matter is currently before the Court on the parties' cross-motions for summary judgment. (Docs. #131, 132).  Both motions have been fully briefed (Docs. #135, 136, 137, 138), and are ripe for review.  For the reasons set forth below, because Covington Ordinance O-2-09 is a reasonable content-neutral time, place, and manner restriction on speech that leaves open ample channels of communication, Defendant's Motion for Summary Judgment (Doc. #132) is **granted in part** and **denied in part**, and Plaintiff's Motion for Summary Judgment (Doc. #131) is **denied**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Bench Billboard Company, is an Ohio business that installs and maintains advertising benches on both public and private property throughout Michigan, Ohio,

1

Indiana, and Kentucky.  Plaintiff's benches are usually placed near public bus stops or traffic signals at busy intersections.  The benches are approximately 6 feet long, 2 feet deep and 3.5 feet tall.  The backrest of the bench features an advertising sign that is 2 feet high and 6 feet long, providing Bench Billboard's customers with a total of 12 square feet of advertising space per bench.  The benches are substantial: the ends of each bench are composed of pre-formed reinforced concrete, giving the benches a total weight of 475 pounds.  Prior to the City of Covington's enactment of the ordinances at issue in this case, Bench Billboard had approximately 22 benches located within the City of Covington, and had been placing benches in Covington for over 45 years.

On August 26, 2005, the City of Covington enacted Ordinance O-48-05 which regulated the placement of "encroachments" in the public rights-of-way. By its terms, O-48-05 specifically prohibited the placement of advertising benches in the public rights-of-way unless the person seeking to install the bench first obtained a permit and/or franchise agreement from the City of Covington.[1]

---

[1] The relevant parts of the Ordinance O-48-05 are as follows:

(B) *Permit Required.*  No person shall, directly or indirectly, as principal, agent or employee, place any bench, vending machine, planter, or other item causing an encroachment along any public right-of-way without having obtained a permit to do so from the Code Enforcement Department of the city.

(C) *Franchise Agreement.*
　　　(1) No person shall install or maintain any bench, transit shelter or other public service item that incorporates advertising panels on any public right-of-way- unless installed in accordance with a franchise agreement granted by the city.

　　　(2) The provisions of this section shall not be construed to prohibit the installation and maintenance of benches, transit shelters or other public service items without advertising panels on any public right-of-way, provided that a permit for each item has been obtained pursuant to division (B).

Covington, Ky., Code § 96.71 (2005) (repealed).

Following the enactment of the O-48-05, the City advised all owners of advertising benches located within the City that their benches, as violative of the encroachment ordinance, must be voluntarily removed, or they would be confiscated by the Covington Public Works Department.[2]  (Doc. #73, Ex. I).  All of the bench owners complied with the City's request - except Bench Billboard.  Bench Billboard protested, and attempted to find a way around the ordinance by moving several of its benches onto private property, removing others from the City of Covington, and requesting that the City grant it a franchise agreement under the Ordinance.  (Doc. #73, Ex. K).  Bench Billboard's efforts were unsuccessful; in October 2005, the City confiscated any remaining benches that Bench Billboard had failed to voluntarily remove and placed them in a storage facility.  (Doc. #73, Ex. K).

In addition to requesting the removal of all advertising benches from Covington's rights-of-way, the City also contacted the Transit Authority of Northern Kentucky (TANK) - a Kentucky public utility which provides mass transit services to Boone, Campbell, and Kenton counties as well as downtown Cincinnati - and requested TANK comply with the encroachment ordinance by removing all advertising panels from its bus shelters located within the City of Covington.  After determining that very little income was generated from the advertising panels in question, TANK agreed to voluntarily cease placing paid advertisements on its bus shelters in Covington.  However, TANK made clear to the City

---

[2] Bench Billboard asserts throughout its submissions to the Court that Covington's encroachment ordinances prohibit only Bench Billboard's advertising benches: "[The City] has only denied BBC the right to place advertising benches on the right of ways."  (Doc. #135 at 15).  This contention, however, is not supported by the record, which establishes that benches belonging to no fewer than six separate entities were removed following the enactment of O-48-05, and continue to be prohibited under O-2-09.  (Doc. #73, Ex. S at 15).

3

that its actions were purely voluntary, asserting that, as a public utility, it was exempt from complying with municipal laws which attempt to regulate the placement or characteristics of TANK's service facilities.  (Doc. #73, Ex. N).[3]

The City also requested that TANK place new benches at several of its high-traffic bus stops in Covington.  TANK agreed, purchasing new painted metal benches that had the logo "TANK" worked into the metal back of each bench.[4]  Over thirty of these benches were placed at TANK bus stops throughout Covington, several of them replacing Bench Billboard advertising benches previously removed by the City.  (Doc. #79, 29:3-30:5; 65:8-66:5).

Bench Billboard commenced the instant action against the City of Covington on April 6, 2006, alleging that Ordinance O-48-05 violated Bench Billboard's rights under the First and Fourteenth Amendments of the United States Constitution (and analogous provisions in the Kentucky Constitution), and seeking relief under Section 1983.  (Doc. #1).  In addition, the Complaint included state-law claims of tortious interference with a business/contractual relationship and conversion.  *Id.*  Bench Billboard sought to recover compensatory and punitive damages, injunctive relief against the enforcement of Ordinance O-48-05, and attorney's fees and costs.  *Id.*  Since commencing this action, Bench

---

[3] Although TANK has reserved the right to resume selling advertising space on its Covington bus shelters at any time, its shelters have remained free of advertising since November, 2006.  (Doc. #79, 96:19-98:9).

[4] Throughout its briefs, Bench Billboard refers to TANK's benches as "advertising benches," presumably because each bears the logo "TANK.".  However, Bench Billboard's characterization of TANK's benches is inaccurate.  Unlike Bench Billboard's benches, which feature large, full-color advertisements for off-site services on the back of each bench, TANK's benches contain a single word, "TANK," worked into the metal back of each bench.  TANK's logo does not direct passers-by to take any specific action, or provide information regarding the services TANK provides; therefore, the Court finds that the logo on the back of TANK's benches constitutes identification (of ownership, of the location of bus stops) rather than advertising.

Billboard has continued to place its advertising benches on sidewalks throughout the City of Covington.

On January 20, 2009, the City repealed Ordinance 0-48-05, and adopted a new ordinance governing the placement of items in the public rights-of-way.[5]   Titled "Encroachments on or in the Public Right-of-Way," Ordinance O-2-09 maintained the previous ordinance's prohibition on encroachments in the public rights-of-way, but carved out eight exceptions which allow: sandwich boards abutting a licenced business, planters, tables or chairs listed in a valid permit, set-outs of merchandise abutting a business establishment, property placed in the right-of-way by a governmental or quasi-governmental agency or body, temporary signs promoting festivals or special events, temporary scaffolding, and encroachments otherwise allowed by the City of Covington Code of Ordinances.   Covington, Ky., Code § 96.01 (2009).[6]   In addition, the new

---

[5] The City also completely revised the section of its zoning code applicable to "Signs."  *See* Ordinance O-37-08 (repealing Article 10 of the Covington Code of Ordinances and replacing it with a new Article 10 titled "Sign Regulations").

[6] In pertinent part, Ordinance O-2-09 provides:

(B) *Encroachments on or in the Public Right-of-Way Prohibited*

(1) No encroachment shall be allowed on or in a public right-of-way including public sidewalks or streets, unless otherwise provided herein or elsewhere in the Covington Code of Ordinances.  Prohibited items include, but are not limited to, items such as: shelters, benches, and vending machines.

(3) Exceptions.  The following exceptions shall be allowed, subject to the condition that the item(s) placed on or in a right-of-way do not create safety hazards by blocking reasonable access to or passage through a right-of-way, or egress and ingress to an adjoining entranceway, or by obstructing vehicular traffic sight lines:

a.    Sandwich board advertising abutting a licensed business, as permitted by the City of Covington Zoning Ordinance.

b.    Planters or landscaping items.

c.    Any table and/or chairs listed in a valid permit issued pursuant to § 96.70.

encroachment ordinance eliminated the licensing scheme contained in O-48-05, and added new restrictions on the size, appearance, and placement of newsracks. *Id.*

In light of the repeal of Ordinance O-48-05, the City moved to dismiss Bench Billboard's Second Amended Complaint in its entirety. (Doc. #97). The Court granted the City's motion with respect to Bench Billboard's claims for injunctive relief, and denied without prejudice the remainder of the motion. (Doc. #110). The parties subsequently settled all claims relating to the constitutionality and enforcement of Ordinance O-48-05. (Doc. #125).

Prior to this partial settlement, the City wrote to Bench Billboard, advising it of the new ordinance, and requesting that Bench Billboard remove all of its advertising benches currently placed in the City's rights of way. (Doc. #116). Bench Billboard again refused,

---

d.   Set-outs of merchandise or other related items in the right-of-way of the abutting business establishment during that business' regular operating hours, as set forth in Section C of this ordinance, unless otherwise prohibited in the City of Covington Zoning Ordinance.

e.   Any property placed in the right-of-way by a governmental or quasi-governmental agency or body, including but not limited to traffic control and directional sighs and devices, fire hydrants, emergency call boxes, United States Postal Service mail receptacles or boxes, telephones, electrical and light poles, public transportation shelters, benches and identifying signs as required or permitted by law, and street identification signs.

f.   Temporary signage that promote festivals, concerts or other special events that are open the [sic] public, subject to the condition that the event has been issued a valid Special Events Permit by the Office of the City Manager. Temporary signage must be removed within seven days following the conclusion of the event.

g.   Temporary scaffolding or other materials related to exterior building renovation and/or construction, subject to the conditions set forth in § 96.05.

h.   Any encroachment otherwise allowed in the City of Covington Code of Ordinances.

Covington, Ky., Code § 96.01 (2009).

6

and threatened - in light of its belief that Ordinance O-2-09 was unconstitutional, and its assertion that its benches qualify as non-conforming, pre-existing uses under Kentucky law - to file suit in federal court if the City removed Bench Billboard's advertising benches from the City's sidewalks, or otherwise attempted to enforce the new ordinance against Bench Billboard.  (Doc. #116, Ex. CC).

In response to Bench Billboard's threats, the City requested, and was granted, leave to amend its Answer to assert a counterclaim for a declaratory judgment that Ordinances O-2-09 ("Encroachments on or in the Public Right-of-Way") and O-37-08 ("Sign Regulations") are constitutional.  (Docs. #115, 118, 119).  Bench Billboard filed an Answer to the City's counterclaim denying its allegations, and asserting a reciprocal counterclaim against the City.  (Doc. #126).  As with its prior challenge to Ordinance O-48-05, Bench Billboard alleges that the new ordinance violates the First and Fourteenth Amendments to the United States Constitution, and seeks compensatory and punitive damages, declaratory relief, and attorney's fees and costs.  *Id.*  The action has now culminated in cross-motions for summary judgment, which are ripe for adjudication.

## II.  ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The fact that both parties filed summary judgment motions does not alter the standard by which this Court reviews these motions: "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all

facts and inferences in the light most favorable to the nonmoving party."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

"The moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

**B.    First Amendment**

The First Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, prohibits the government from making any law "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech."  U.S. Const. amend. I.  The First Amendment, however, "'does not guarantee the right to communicate one's views at all times and places or in any manner.'"  *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005) (quoting *Wheeler v. Comm'r of Highways*, 822 F.2d 586, 589 (6th Cir. 1987)).

To determine whether Ordinance O-2-09 violates Bench Billboard's First Amendment right to free speech, this Court must follow the three-prong test enunciated by the Sixth Circuit Court of Appeals in *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir.

2005).  First, the Court must decide "whether [Bench Billboard's] speech is protected under the First Amendment.  *Id.*  Second, the Court must "'identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.'"  *Id.* (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).  Last, the Court "must determine if the City's reasons for prohibiting [Bench Billboard's] speech satisfy the appropriate standard."  *Id.*  Each prong will be addressed in turn.

### 1.      Bench Billboard's Speech is Protected

The parties acknowledge that Bench Billboard's activities are protected under the First Amendment.  The Court agrees.  Whether Bench Billboard displays commercial or non-commercial messages on the backs of its advertising benches, the speech in which it engages is protected by the First Amendment.  *See Lorrilard Tobacco Co. v. Reilly*, 533 U.S. 525, 553 (2001) ("For over 25 years, the Court has recognized that commercial speech does not fall outside the purview of the First Amendment."); *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("[S]igns are a form of expression protected by the Free Speech Clause . . . ."); *Prime Media, Inc.*, 398 F.3d at 818 ("Billboards and other visual signs, it is clear, represent a medium of expression that the Free Speech Clause has long protected.").

### 2.      Covington's Sidewalks Are a Traditional Public Forum

The public-forum doctrine recognizes "three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum."  *Cornelius,* 473 U.S. at 802.  "Traditional public fora are defined by the objective characteristics of the property, such as whether 'by long tradition or by government fiat,' the

property has been 'devoted to assembly and debate.'" *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

Generally, city sidewalks constitute traditional public fora. *Frisby v. Schultz*, 487 U.S. 474, 481 (1988) (noting that "public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum"); *United States v. Grace*, 461 U.S. 171, 177 (1983) (stating that "'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums'"). The Sixth Circuit Court of Appeals has recognized, however, that "not all sidewalks are public fora." *United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 452 (6th Cir. 2004); *see United States v. Kokinda*, 497 U.S. 720 (1990) (postal service sidewalk separated from main highway sidewalk and could be used only to enter the post office); *Greer v. Spock*, 424 U.S. 828 (1976) (sidewalks located in an enclosed military base and separated from the streets and sidewalks of the city itself). "Whether a given sidewalk is considered a public forum, of course, hinges on a case-by case inquiry in which no single factor is dispositive." *United Church of Christ*, 383 F.3d at 453.

In the instant case, the City cannot reasonably dispute that the sidewalks upon which Bench Billboard has placed its advertising benches constitute a public forum. The sidewalks are publicly owned, and many are part of historic downtown Covington; they are "public thoroughfare[s]" which are "open to the public for general pedestrian passage." *See United Church of Christ*, 383 F.3d at 452. Therefore, the Court finds that the City's sidewalks are a traditional public forum.

10

### 3.    Ordinance O-2-09 is a Reasonable Content-Neutral Restriction on the Time, Place, and Manner of Speech

Although "[t]raditional public forum property occupies a special position in terms of First Amendment Protection," *Grace*, 461 U.S. at 180, and "the government may not prohibit all communicative activity" on such property, *Perry*, 460 U.S. at 45, Supreme Court precedent

> makes clear . . . that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). The Court will address each element of this test individually.

### a.    Ordinance O-2-09 is Content Neutral

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The government's purpose in enacting the regulation is the controlling consideration. "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has in incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (Government regulation of expressive activity is content neutral so long as it is "*justified* without reference to the content of the regulated speech").

11

The preamble to Ordinance O-2-09 sets forth the City's justification for its regulation of encroachments:

> WHEREAS, City of Covington Board of Commissioners has determined that prohibiting encroachments in the public right-of-way is necessary to ensure the health, safety and general welfare of the City of Covington and its citizens; and
>
> WHEREAS, the Board of Commissioners has determined that prohibiting encroachments in the public right-of-way assists in ensuring aesthetically pleasing City sidewalks, streets, neighborhoods, and business districts; and . . .
>
> WHEREAS it [is] necessary and prudent to regulate items in or on the public right of way to ensure the safety of pedestrians and operators of vehicles traversing City streets, sidewalks and right of ways.

Covington, Ky., Code § 96.01 (2009). These reasons have nothing to do with the content or viewpoint of any speech that my be restricted or prohibited by the ordinance and therefore satisfies the requirement that time, place, or manner regulations be content neutral. *See Ward*, 491 U.S. at 792; *Prime Media*, 398 F.3d at 819 ("The restrictions have no censorial purpose, as they are both viewpoint- and content-neutral and regulate only the non-expressive components of billboards.").[7]

---

[7] Neither party contends that Ordinance O-2-09 is a content-based restriction. In fact, neither party addressed this specific argument in its briefs, as both devoted the majority of their briefs to evaluating Ordinance O-2-09 as a regulation of commercial speech. Although, as applied to Bench Billboard, the encroachment certainly restricts commercial speech within the City of Covington, because Ordinance O-2-09 regulates the placement of items - such as benches - on which commercial or non-commercial signs may be posted - rather than advertising signs alone - the Court finds that it is appropriately analyzed as a content-neutral time, place, and manner restriction on speech. *See Prime Media, Inc.*, 398 F.3d at 824 (analyzing an ordinance restricting the size of commercial billboards as a content-neutral time, place, and manner restriction on speech, and observing that the "framework for analyzing regulations of commercial speech [ ] is 'substantially similar' to the test for time, place, and manner restrictions").

### b. Ordinance O-2-09 Serves a Significant Government Interest

As its preamble states, Ordinance O-2-09 advances the City of Covington's interests in aesthetics, and traffic and sidewalk safety. *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984) ("[M]unicipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression."); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (plurality) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further–traffic safety and the appearance of the city–are substantial governmental goals.  It is far too late to contend otherwise."); *Prime Media, Inc.*, 398 F.3d at 819 ("The regulations advance legitimate governmental interests–aesthetics and traffic safety.").

The record demonstrates that the City's interests in aesthetics and safety is not merely speculative; rather, it contains evidence - such as the testimony of City Manager John Jay Fossett[8] - which indicates that citizen complaints provided the impetus for the

---

[8] City Manager Fossett testified that the City received numerous complaints regarding advertising benches prior to the enactment of the first encroachment ordinance, O-48-05:

> Q.    In what way is this regulation of these benches going to improve the values of surrounding properties?
>
> A.    Residents were complaining that the benches were ugly, and that they were reducing their property values when they were placed in front of their residence.  And they felt they were on city property and that this should be regulated for prohibited.
>
> Q.    Did these – did you personally receive any of these complaints?
>
> A.    Yes.
>
> Q.    Okay.  On the complaints that the benches were ugly, are we referring to the Bench Billboard Company benches?
>
> A.    Both those and other benches.

(Doc. #78, 21:7-21-22).

13

enactment of the encroachment ordinances.  *See* Covington, Ky., Code § 96.71 (2005) (repealed) ("[T]he Board of Commissioners of the City of Covington has received numerous complaints from citizens regarding the encroachment of the public right-of-ways by benches, planters, vending machines and other items that hinder pedestrians' ability to use city sidewalks and public ways . . . .").

Bench Billboard does not dispute that a municipality's interest in aesthetics and safety may constitute significant government interests which justify a content-neutral restriction on speech.  Rather, Bench Billboard contends that Ordinance O-2-09 is underinclusive, and that its exceptions call into question whether the City actually has an interest in improving safety and aesthetics.  The Supreme Court has recognized that an ordinance's exceptions may "diminish the credibility of the government's rationale for restricting speech in the first place."  *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994).  Specifically, Bench Billboard contends that the ordinance's exceptions regarding newsracks, and bus shelters and benches placed by governmental or quasi-governmental organizations render the ordinance's prohibition on other encroachments - such as benches - meaningless and ineffective.

This argument is unpersuasive for two reasons.  First, Ordinance O-2-09 cannot be deemed underinclusive because it fails to regulate items placed in the rights-of-way by quasi-governmental organizations such as TANK, because the City is arguably without power to regulate the activities of such organizations.  *See, e.g*, Ky. Rev. Stat. § 100.324(1) (stating that public utilities "shall not be required to receive approval from the [municipality] for the location or relocation of any of their service facilities.").  Therefore,

14

rather than representing a choice by the City to affirmatively allow TANK, and other similar entities, to place items in Covington's rights-of-way, exception (e) merely reflects limits of the City's power to regulate such entities.   *See* Covington, Ky., Code § 96.01(B)(3)(e) (exempting from regulation "public transportation shelters, benches and identifying signs *as required or permitted by law*" (emphasis added)).

Second, the City's decision to allow newsracks to remain in its rights-of-way does not call into question the City's stated interest in clear and aesthetically-pleasing sidewalks; rather this exception merely demonstrates that the City has concluded that its interest in allowing certain messages - such as the transmittal of current news - to be freely conveyed to its citizens outweighed they City's aesthetic interest in eliminating all encroachments from its sidewalks.   *See City of Ladue*, 512 U.S. at 53 ("[T]he exemptions from Ladue's ordinance demonstrate that Ladue has concluded that the interest in allowing certain messages to be conveyed by means of residential signs outweighs the City's aesthetic interest in eliminating outdoor signs.").   Furthermore, the City is allowed to make a subjective determination that the newsracks - although by no means beautiful - are more aesthetically pleasing than advertising benches: "A city may fairly prefer smaller objects of visual blight over larger ones."   *Prime Media*, 398 F.3d at 822 ("And it does not undermine the City's rationale for the regulation because the banned billboards and the permitted billboards are not 'equally unattractive.'" (quoting *Taxpayers for Vincent*, 466 U.S. at 811)). Simply stated, the exceptions to Ordinance O-2-09 do not undermine the stated purpose of the regulation.

For these reasons, the Court finds that the encroachment ordinance advances the significant government interests of sidewalk and traffic safety and aesthetics.

15

### c. Ordinance O-2-09 is Narrowly-Tailored and Leaves Open Ample Channels of Communication

"Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not advance its goals." *Prime Media, Inc.*, 398 F.3d at 819). Therefore, to survive First Amendment review, an ordinance must be "narrowly tailored to serve a significant governmental interest," and must "leave open ample alternatives for communication of the information." *Ward*, 491 U.S. at 791. An ordinance is "narrowly tailored" if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799.

However, the requirement that an ordinance be "narrowly tailored" does not require that the ordinance be "the least restrictive or least intrusive means" of accomplishing the government's goal. *Ward*, 491 U.S. at 798. "Rather, the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Accordingly, "[a] complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby,* 487 U.S. at 425.

Because the City's ban on encroachments, such as benches, is directly related to the purpose of Ordinance O-2-09 – eliminating items from the City's sidewalks – it satisfies the tailoring prong of time-place-and-manner scrutiny. Here, as in *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984), in which the Supreme Court upheld a complete ban on posting signs on telephone poles, the "substantive evil" targeted by the subject regulation – visual blight there, unsightly items on the public sidewalks here – "is

16

not merely a possible by-product of the activity, but is created by the medium of expression itself. . . . [T]he application of the ordinance in this case responds precisely to the substantive problem which legitimately concerns the City.  The ordinance curtails no more speech than necessary to accomplish its purpose."  *Taxpayers for Vincent*, 466 U.S. at 810.

The "fit" between the City's means and ends is a reasonable one.  By banning advertising benches from Covington's sidewalks, "the City did no more than eliminate the exact source of the evil it sought to remedy."  *Id.* at 808; *see Metromedia*, 453 U.S. at 508 (plurality) ("If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.").

In addition, because Ordinance O-2-09 arguably only bans one type of sign within the City of Covington, it leaves open ample alternatives for the communication of the information displayed on Bench Billboard's advertising benches.  The ordinance does not "affect any individual's freedom to exercise the right to speak and distribute literature in the same place where [advertising benches] are prohibited," *Taxpayers for Vincent*, 466 U.S. at 812, and Bench Billboard's customer's remain free to advertise their businesses or causes on the internet, radio, or in printed periodicals.  In addition, to the extent that its signs are not prohibited by Covington's zoning code, Bench Billboard remains free to negotiate with private property owners to secure new property on which to place its benches.

In conclusion, the Court finds Ordinance O-2-09 to be a reasonable restriction on the time, place, and manner of speech that leaves open ample channels of communication,

17

and therefore declares that Ordinance O-2-09 is constitutional in that it does not, as applied to Bench Billboard,[9] violate the First Amendment to the United States Constitution.

### C.   Equal Protection

The Fourteenth Amendment to the United States Constitution states, in part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Supreme Court has long recognized that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations and internal quotations omitted). Although equal protection claims usually involve allegations by members of a certain class that they are being treated disparately from members of another class, *see Shaw v. Reno*, 509 U.S. 630 (1993), equal protection claims can be brought by a "class of one" where the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

---

[9] As noted above, Bench Billboard also purports to present a facial challenge to Ordinance O-2-09: "The Ordinances are unconstitutional on their face and as applied because they infringe and/or unduly burden BBC's First Amendment rights regarding commercial speech." (Doc. #126 at 3). However, Bench Billboard has not presented the Court with any arguments regarding how Ordinance O-2-09 is substantially overbroad or impermissibly vague.

The Supreme Court has recognized that a facial challenge is not appropriate in every case. *Taxpayers for Vincent*, 466 U.S. at 801 ("This is not, however, an appropriate case to entertain a facial challenge based on overbreadth."). In order for a facial challenge to be appropriate in a given case, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.*

Here, as nothing in the record indicates that Ordinance O-2-09 will have any different impact on the free speech interests of parties not before the Court than it has on Bench Billboard, and the Court has already determined that the ordinance is constitutional as applied, the Court declines to entertain a facial challenge to Ordinance O-2-09. *Id.*

Under the "class of one" theory, a plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: "either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005) (quoting *Klimik v. Kent County Sheriff's Dept.*, 91 F. App'x 396, 400 (6th Cir. 2004)); *Trihealth, Inc. v. Bd. of Commr's*, 430 F.3d 783, 788 (6th Cir. 2005) ("To prevail, [plaintiffs] must demonstrate that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that they County's actions were irrational."). Bench Billboard bears the burden of demonstrating that the City's action lacks a rational basis; the City, conversely, bears no burden of proof. "Its legislative choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (quoting *Warren*, 411 F.3d at 711).

To succeed on its "class of one" equal protection claim, Bench Billboard must first prove that it has been treated differently than similarly situated individuals or entities. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("[T]he basis for any equal protection claim is that a locality has treated similarly situated individuals differently."). To satisfy this threshold inquiry, it must establish that it and other individuals or entities who were treated differently "were similarly situated in all material respects." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (citing *Trihealth, Inc.*, 430 F.3d at 790). Bench Billboard has not satisfied that burden.

Because Bench Billboard cannot demonstrate that any similarly situated individuals were treated more favorably than Bench Billboard, its equal protection claim fails as a

matter of law.  Bench Billboard contends that newsracks, sandwich boards, and bus shelters "are similarly situated to BBC's advertising benches."  (Doc. #131 at 17).  This argument, however, misconstrues the nature of the Court's threshold inquiry.  The issue is not whether Bench Billboard's advertising benches are materially similar to those *items* which the City allows to be placed in its rights-of way, but whether the *individuals or entities* responsible for the placement of those items are "similarly situated in all material respects" to Bench Billboard.

Each of the entities responsible for the placement of items exempted under the encroachment ordinance is dissimilar in at least one respect to Bench Billboard: the nature of its business.  Each provides a distinct service or product to a different customer base. Bench Billboard is a private company that sells and displays off-site advertising on the backs of its benches.  TANK is a public utility that provides mass transit services in Northern Kentucky and Cincinnati, the entities placing newsracks within the City are publishers of commercial and non-commercial publications, and the small businesses utilizing sandwich boards are located within Covington, and provide a variety of services.

Because Bench Billboard's business is materially different from the business engaged in by entities described above, Bench Billboard is not "similarly situated" to those entities.  Due to Bench Billboard's failure to produce evidence of similarly situated entities who were treated more favorably,[10] the Court need not inquire whether there was a rational

---

[10] Tellingly, Bench Billboard makes no mention of the fact that it was not the only advertising bench company with benches located within the City of Covington, or that the City enforced its encroachment ordinance against that company – Clear Media – in the same manner as it was enforced against Bench Billboard.  (Doc. #137, Ex. UU) ("As you may or may not know, the City of Covington, Kentucky recently passed a comprehensive ordinance prohibiting encroachments in the public right-of-way.  Prohibited items include benches, shelters and vending machines. . . . Please remove any and all Clear Media benches from the public sidewalk . . . [i]f these items are not removed within this time period, the City of Covington will

basis for the disparate treatment. *See* Braun, 519 U.S. at 575 ("[W]e need not apply the rational basis test because the plaintiffs have failed to demonstrate the existence of any similarly situated [individuals]."); *Rondingo, L.L.C. v. Casco Twp.*, 330 F. App'x 511, 519 (6th Cir. 2009) (upholding district court's dismissal of plaintiff's equal protection claim in case alleging selective enforcement of zoning ordinances against a commercial-composting operation based upon its conclusion that plaintiff was not similarly-situated to rival composting operation). Consequently, Bench Billboard's equal protection claim fails as a matter of law, and the Court declares Ordinance O-2-09 to be constitutional in that it does not violate Bench Billboard's Fourteenth Amendment right to equal protection of the laws.

### D. Non-Conforming Uses Under Kentucky Law

Finally, Bench Billboard contends that, pursuant to Kentucky Revised Statues Section 100.253, its benches are entitled to non-conforming use status and should be permitted to remain on the City's sidewalks despite the encroachment ordinance's prohibition on benches. Section 100.253(1) states that "[t]he lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations . . ." K.R.S. § 100.253.

Section 100.253, however, has no application to the instant case because Ordinance O-2-09 is not a zoning ordinance. By its very terms, that section only applies to uses which become illegal due to the adoption of a *zoning* ordinance. The Kentucky Court of Appeals

---

remove the items and bill you for the cost of the removal."). Clear Media - as an entity engaged in the sale of off-site advertising on the backs of its advertising benches - is undoubtedly similarly situated to Bench Billboard, yet has not received any more favorable treatment from the City.

has recognized that not all ordinances adopted by a municipality affecting the use of land or commercial signage qualify as zoning ordinances. *See, e.g.*, *LM Entertainment, Inc. v. City of Mt. Sterling*, No. 2008-CA-000469-MR, 2009 WL 197549, at *3 (Ky. Ct. App. July 10, 2009) (holding that a city ordinance requiring a separate license for sexually-oriented businesses was "not a zoning ordinance and K.R.S. 100.253 does not apply"); *Mr. B's Bar & Lounge, Inc. v. City of Louisville*, 630 S.W.2d 564, 567 (Ky. Ct. App. 1981) (holding that a city ordinance regulating the appearance of signs belonging to sexually-oriented businesses was "not a zoning ordinance").

The conclusion that the encroachment ordinance is not a "zoning" ordinance is supported by the codified location of Ordinance O-2-09 within the City of Covington Code of Ordinances. The encroachment ordinance is not part of Covington's zoning code: Ordinance O-2-09 is part of Title IX "General Regulations" while the City's zoning code is located in Title XV "Land Usage." In addition, the procedure utilized by Covington's Board of Commissioners to enact the encroachment ordinance – a simple vote – indicates that the Board did not consider or intend Ordinance O-2-09 to operate as an amendment to the City's zoning code.[11] *Cf.* Ky. Rev. Stat. § 100.211 (requiring the publication of notice, a public hearing, and a recommendation by the county planning commission before amendments may be made to the text of a zoning regulation).

Because Ordinance O-2-09 is not a zoning ordinance, its enactment does not entitle Bench Billboard's advertising benches to non-conforming use status. Consequently, the City's encroachment ordinance prohibits Bench Billboard from placing its benches in the

---

[11] In contrast, Ordinance O-37-08 ("Sign Regulations") was enacted in compliance with the procedures detailed in Section 100.211, and is codified as part of Covington's zoning code.

City's rights-of-way, regardless of how many years the benches have been located within Covington.

### E.    Standing to Challenge Ordinance O-37-08

"Standing is the 'threshold question in every federal case.'"  *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).  There is "[n]o principle . . . more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  "Article III standing . . . enforces the Constitution's case-or-controversy requirement."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).

Declaratory judgment actions, such as the instant case, often require courts to face the difficult task of distinguishing "between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies."  *Kardules v. City of Columbus*, 95 F.3d 1335, 1343-44 (6th Cir. 1996).  To satisfy the case or controversy requirement, the dispute "'must be definite and concrete' and must allow for 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.'"  *Sankyo Corp. v. Nakamura Trading Corp*, 139 F. App'x 648, 651 (6th Cir. 2005) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)); *see also Fieger v. Mich. Supreme Court*, 553 F.3d 955, 969 (6th Cir. 2009) ("'For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" (quoting *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977))).

23

There exists no bright line test to guide the Court's inquiry.  As the Supreme Court has recognized, "it would be difficult, if it would be possible, to fashion a precise test for determining in every [declaratory judgment] case whether there is [an actual] controversy. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).  When evaluating whether a declaratory judgment action presents an actual controversy, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*

In the instant case, neither party has standing to seek declaratory relief related to Ordinance O-37-08 ("Sign Regulations").  As the record does not indicate that the City took any action respecting Bench Billboard as a result of Ordinance O-37-08, neither party can demonstrate the existence of a "substantial controversy" concerning the constitutionality of that ordinance.

Indeed, the City's counterclaim makes clear that its confiscation of Bench Billboard's benches was justified, not by the zoning code provisions regulating signage, but by the encroachment ordinance.  (Doc. #119 at ¶9) ("On March 5, 2009, John Jay Fossett, City Manager for the City of Covington, sent a letter to Bruce Graumlich, owner of Bench Billboard Company, advising him of the newly enacted encroachment ordinance (Ordinance O-2-09) and asking Bench Billboard Company and him to remove the benches placed on the City's rights-of-way.").  Likewise, Bench Billboard's submissions to the Court indicate that it does not consider Ordinance O-37-08 to apply to its advertising benches: "to the extent that the City argues that the 2008 Ordinance in some way prohibits the BBC advertising bench from being placed on the City public right of ways . . . it should be

24

declared unconstitutional as it applies to BBC . . . ."  (Doc. #131 at 4).

Because the City has yet to enforce Ordinance O-37-08 against Bench Billboard, the Court finds that neither party has established the existence of a "case or controversy" with respect to that ordinance, and declines to render an advisory opinion on its constitutionality. Consequently, summary judgment is not appropriate, and the City's claim that Ordinance O-37-08 is constitutional will be dismissed for lack of subject matter jurisdiction.

### III.  CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1.      Defendant's Motion for Summary Judgment (Doc. #132) is hereby **GRANTED IN PART** and **DENIED IN PART**,

   A.      Defendant's motion is **GRANTED** as to Defendant's claim that Ordinance O-2-09 is constitutional;

   B.      Defendant's motion is **DENIED** as to Defendant's claim that Ordinance O-37-08 is constitutional; that claim is dismissed for lack of subject matter jurisdiction;

2.      Plaintiff's Motion for Summary Judgment (Doc. #131) is hereby **DENIED**;

3.      The Court hereby **DECLARES** City of Covington Ordinance O-2-09 to be constitutional in that it does not, as applied to Bench Billboard, violate either the First or the Fourteenth Amendments to the United States Constitution;

4.      As there remains no justiciable issue before the Court, this matter is hereby **DISMISSED** and **STRICKEN** from the docket of the Court; and

5.     A Judgment in favor of Defendant will be entered contemporaneously herewith.

This 31st day of January, 2010.



Signed By:

*David L. Bunning*   *DB*

**United States District Judge**

G:\DATA\Opinions\Covington\2-06-75-MSJ-MOO.wpd